**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kristina Guglielmo, et al., | No. CV-18-03718-PHX-SMB |
| Plaintiffs, | **ORDER** |
| v. | |
| LG&M Holdings LLC, et al., | |
| Defendants. | |

At issue is Defendants LG&M Holdings, LLC d/b/a Xplicit Showclub, ("Defendant Company"), Fred Martori, Kevin Owensori, Jeffrey Bertoncino, and Michael Scott's (collectively, "Defendants") Motion to Dismiss for Lack of Subject Matter Jurisdiction or, alternatively, Motion to Stay These Proceedings and Compel Arbitration. (Doc. 23). Kristina Guglielmo ("Plaintiff") has filed a Response (Doc. 27, "Resp."), to which Defendants replied (Doc. 29, "Reply"). Plaintiff alleges violations of state and federal employment law and brought this action on behalf of all others similarly situated. (Doc. 1). Six people claiming they are similarly situated—Mehlihia Saralehui, Stacee Landenberger, Emily Litcoff, Brandi Egnash, and Demaje Jeter (collectively, "Plaintiffs")—have opted into the lawsuit. (Docs. 22, 24, 25). Defendants argue the case should be dismissed for lack of jurisdiction or, alternatively, stayed because Plaintiffs signed arbitration agreements but have not yet arbitrated. For the reasons that follow, the Court will deny Defendants' motion to dismiss for lack of jurisdiction but grant the alternative motion to stay the proceeding and compel arbitration.

## I.    Background

The Motion at issue concerns whether Defendants can compel Plaintiff to arbitrate her claims before bringing this action. The Federal Arbitration Act (the "FAA") provides "an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "The Court's role under the act is . . . limited to determining (1) whether a valid agreement to arbitrate exists, and if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).

Plaintiff alleges she represents a class of current or former exotic dancers that worked at Defendant Company, which is owned by Martori, Owensori, Bertoncino, and Scott. She brings claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, the Arizona Wage Act ("AWA"), A.R.S. § 23-350 *et seq.*, and the Arizona Minimum Wage Act ("AMWA"), A.R.S. § 23-363 *et seq.* Defendants' motion argues this Court does not have jurisdiction to hear the case because Plaintiffs signed arbitration agreements. Alternatively, Defendants ask the Court to stay the proceeding and compel arbitration. Plaintiffs argue that the arbitration agreements cannot be enforced because they are unconscionable and cannot be severed from the agreements.

There are two different agreements at issue in this case. Both include arbitration clauses. All Plaintiffs signed at least one of these agreements and some signed both. A manager signed the agreements on behalf of the Defendant Company. The first is titled "Xplicit Showclub Entertainment Performance Lease" ("Contractor Lease"). Plaintiffs Guiglielmo, Litcof, Cabiles, Landenberger, Saralehui, and Egnash signed a Contractor Lease. The second agreement does not have a title, but the Court will refer to it as the "Entertainment Lease." Plaintiffs Guglielmo, Litcof, Cabiles, and Jeter signed an Entertainment Lease. Defendants included a copy of Guglielmo's agreements as attachments to their motion. Plaintiffs submitted Gugliemo's and the other plaintiffs' agreements as exhibits to a declaration filed with the Court. (Doc. 28). The Contractor

Lease is a short, two-page document, and the Entertainment Lease is a more comprehensive eight-page document. (Doc. 28).

## II.    Legal Standards

Courts apply state-law principles to determine whether an agreement to arbitrate is valid. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 892 (9th Cir. 2002). Neither party contests that Arizona state law governs the agreements. "Arizona law . . . clearly provides that the determination of unconscionability is to be made by the court as a matter of law." *Maxwell v. Fidelity Fin. Serv., Inc.*, 907 P.2d 51, 56 (Ariz. 1995). The test for unconscionability comes from comment 1 to the Uniform Commercial Code § 2-302:

> The basic test (for unconscionability) is whether, in the light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract. . . . The principle is one of the prevention of oppression and unfair surprise and not of disturbance of allocation of risks because of superior bargaining power.

*Seekings v. Jimmy GMC of Tucson, Inc.*, 638 P.2d 210, 216 (Ariz. 1981); *accord Maxwell*, 907 P.2d at 57. The Arizona Supreme Court in *Maxwell* further explained that most jurisdictions, including Arizona, divide the unconscionability doctrine into substantive and procedural parts. Procedural unconscionability concerns "'unfair surprise,' fine print clauses, mistakes or ignorance of important facts or other things that mean bargaining did not proceed as it should." *Maxwell*, 907 P.2d at 57–58 (quoting Dan B. Dobbs, 2 Law of Remedies 406 (2d ed. 1993)). Substantive unconscionability, on the other hand, considers whether a contract is "unjust or 'one-sided.'" *Id.* If a term of a contract is unconscionable, a court may enforce the remainder of the contract without the unconscionable term or "refuse enforcement of the contract altogether." *Id.* at 60 (quoting Dobbs, 2 Law of Remedies 705); *accord* Restatement (Second) of Contracts § 208 (1981)).

Here, Plaintiffs argue the agreements are substantively unconscionable, but do not argue they are procedurally unconscionable. While some courts require "some quantum of

*both* procedural and substantive unconscionability to establish a claim," Arizona allows unconscionability to be established "with a showing of substantive unconscionability alone, especially in cases involving either price-cost disparity or limitation of remedies." *Id.* at 58–59. Accordingly, the Court will consider whether the agreements are substantively unconscionable.

"[T]he actual terms of the contract" determine whether a contract is substantively unconscionable. *Id.* at 58. They must be "so one-sided as to oppress or unfairly surprise an innocent party, [have] an overall imbalance in the obligations and rights imposed by the bargain, [or have] a significant cost-price disparity." *Id.* (citing *Resource Mgmt. Co. v. Weston Ranch & Livestock Co.*, 706 P.2d 1028, 1041 (Utah 1985)). An example of an unconscionable provision in the context of arbitration is if it makes the cost to arbitrate so high that it effectively denies a person the opportunity to vindicate her rights. *Clark v. Renaissance West, LLC*, 307 P.3d 77, 79 (Ariz. Ct. App. 2013).

Defendants argue that even if Plaintiffs are correct about portions of the agreements being unconscionable, those portions are severable. In Arizona, the "primary" determinant of whether provisions of a contract are severable is "the contractual language." *Kahl v. Winfrey*, 303 P.2d 526, 529 (Ariz. 1956). "If it is clear from its terms that a contract was intended to be severable, the court can enforce the lawful part and ignore the unlawful part." *Olliver/Pilcher Ins., Inc. v. Daniels*, 715 P.2d 1218, 1221 (Ariz. 1986). "A lawful promise made for lawful consideration is not invalid merely because an unlawful promise was made at the same time for the same consideration." *Hackin v. Pioneer Plumbing Supply Co.*, 457 P.2d 312, 319 (Ariz. Ct. App. 1969).

### III.    Analysis

1. <u>Subject Matter Jurisdiction</u>

As a preliminary matter, Defendants have not provided any authority to support the contention that a valid arbitration agreement divests this Court of jurisdiction. As the District of Connecticut has explained:

> While the FAA may require the Court to enforce the disputed

arbitration agreement as a matter of contract, *see* 9 U.S.C. § 2, Defendants have provided no authority to support the proposition that a valid arbitration agreement divests a federal court of its subject-matter jurisdiction. It would be odd if a valid arbitration agreement could have that effect, as "arbitration is simply a [private] matter of contract between the parties."

*D'Antuono v. Serv. Rd. Corp.*, 789 F. Supp. 308, 318 (D. Conn. 2011) (quoting *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684 (2010)). Plaintiffs' FLSA claims are federal law claims, which this Court has subject matter jurisdiction over pursuant to 28 U.S.C. § 1331. The Court has supplemental jurisdiction over the related state law claims pursuant to 28 U.S.C. § 1367(a). Accordingly, the Court will only consider the alternative motion to stay and compel arbitration.

2. The Contractor Lease

The Contractor Lease's arbitration clause reads as follows:

Any dispute or claim under or with respect to this Lease which is incapable of resolution will be resolved by arbitration before one (1) arbitrator in Phoenix, Arizona in accordance with the Rules for Commercial Arbitration of the American Arbitration Association ("AAA"). The appointing Agency shall be the AAA and the arbitrator shall apply Arizona Law to both interpret this Lease and fashion an award. *In no event will Company be liable for any direct, indirect punitive, incidental, special, or consequential damages arising out of this Lease, even if said party has been advised of the possibility of such damages.*

(Contractor Lease ¶ 10) (italics added). It also has a severability clause:

If any provision of this Lease, as applied to either party or to any circumstances, shall be adjudged to be void or unenforceable, the same shall be deemed stricken from this Agreement and shall in no way affect any other provision of this Lease or the validity or enforceability of this Lease. In the event any such provision (the "Applicable Provision") is so adjudged void or unenforceable, Company and Contractor shall take the following actions in the following order: (i) seek judicial reformation of the Applicable Provision: (ii) negotiate in good faith with each other to replace the Applicable

Provision with a lawful provision; and (iii) have an arbitration as provided herein to determine a lawful replacement provision for the Applicable Provision; provided, however, that no such action pursuit to either clauses (i) or (ii) above shall increase in any respect the obligations pursuit to the applicable provision.

(*Id.* ¶ 12). A portion of the Contractor Lease states, "Company and contractor shall not be construed as . . . employer-employee." (*Id.* ¶ 1).

Plaintiffs argue the Contractor Lease is unconscionable and cannot be enforced because it requires them to waive any damages against the Company resulting from the agreement. (Resp. at 4). Within the arbitration provision it states, "in no event will Company be liable for any direct, indirect, punitive, incidental, special, or consequential damages arising out of this Lease[.]" (*Id.* ¶ 10). Plaintiffs correctly note that "FLSA rights cannot be abridged by contract or otherwise waived." *Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728, 740 (1981). They argue that this provision cannot be severed because the severability clause does not allow the contract to be judicially reformed or privately negotiated in any way that increases the obligations of Defendant Company. (Resp. at 4–5). Defendants reply that the waiver portion of the arbitration provision is irrelevant because it does not preclude the type of damages sought by Plaintiffs, which arise out of statute and are compensatory in nature, and, if not, that provision is severable. (Reply at 2–3).

Plaintiffs seek damages arising out of state and federal wage laws. Specifically, under the FLSA, 29 U.S.C. § 216(b), a successful plaintiff is entitled to "the amount of their unpaid minimum wages, or their unpaid overtime compensation." As the 11th Circuit has explained, "It is clear that all of the relief provided in section 216(b) is compensatory in nature." *Snapp v. Unlimited Concepts, Inc.*, 208 F.3d 928, 934 (11th Cir. 2000). Under the AWA, a successful Plaintiff "may recover . . . treble the amount of the unpaid wages," A.R.S. § 23-355(A), and under the AMWA, A.R.S. § 23-364(G), she may recover "the balance of the wages or earned paid sick time owed, including interest thereon, and an additional amount equal to twice the underpaid wages or earned paid sick time," A.R.S.

§ 23-364(G).

Plaintiffs are correct a contract that waives FLSA rights is unconscionable and unenforceable under *Barrentine*. Defendants essentially agree. They do not argue that the provision is an enforceable waiver of damages under the FLSA, AWA, and AMWA, but rather that the provision does not waive the type of damages Plaintiffs seek. For the purposes of this case, the Court finds the distinction between their arguments irrelevant. If Defendants are correct, the provision does not preclude damages under the FLSA, AWA, or AMWA, and is therefore not unconscionable. If Plaintiffs are correct, the provision is unenforceable and stricken from the agreement, because, as explained below, it can be severed from the rest of the contract.

A contract provision can be severed "[i]f it is clear from its terms that a contract was intended to be severable." *Daniels*, 715 P.2d at 1221. Then, "the court can enforce the lawful part and ignore the unlawful part." *Id.* To determine the parties' intent, the court looks to the "contractual language and the subject matter." *Mousa v. Saba*, 218 P.3d 1038, 1044 (Ariz. Ct. App. 2009) (quoting *Kahl*, 303 P.2d at 529). Here, the language of the severance provision is clear: "If any provision of this Lease . . . shall be adjudged to be void or unenforceable, the same shall be deemed stricken from this Agreement and shall in no way affect any other provision of this Lease or the validity or enforceability of this Lease." (Contractor Lease ¶ 12). The parties' intent in this case is that the contract be severable.

Plaintiffs' argument that the severability clause taken as a whole is unconscionable is unpersuasive. Per the severability provision, once a provision has been found to be unenforceable, the parties are to, in the following order, (1) seek judicial reformation of the applicable provision, (2) negotiate in good faith to replace it, and (3) have an arbitration as provided by the contract to determine a lawful replacement provision. Neither of the first two actions, however, "shall increase in any respect the *obligations* pursuit[1] [sic] to the applicable provision." *Id.* (emphasis added).

---

[1] The Court believes this is a clerical error, and the word the parties intended to use was "pursuant."

Plaintiffs argue this provision means that the prohibition on increasing obligations in the Contractor Lease can never be modified to allow for statutory damages under state and federal wage laws. While the severability clause is not a model of clarity, Plaintiffs' interpretation misreads the prohibition on increasing obligations. An "obligation" is a "legal or moral duty to do or not do something." Black's Law Dictionary (9th ed. 2019). "It may refer to anything that a person is bound to do or forbear from doing, whether the duty is imposed by law, contract, promise, social relations, courtesy, kindness, or morality." *Id.* Removing the waiver of damages provision and requiring Defendants to be liable under the FLSA, AWA, or AMWA if Plaintiffs can prove their claims does not increase their obligations, as it does not require them to do or not do something. It merely makes them liable to the same employment laws that govern everybody else. Accordingly, the severability provision is not unconscionable and can be used to strike any provision that waives damages under the FLSA, AWA, or AMWA.

Having found that the agreement is valid, the Court turns to the second step under *Chiron Corporation*: whether the arbitration clause covers the dispute at issue. The Court finds that it does. The arbitration clause says any dispute or claim with respect to the lease will be resolved by arbitration. To determine whether Plaintiffs have a claim, they will have to show they were an employee of Defendants. The Contractor Lease explicitly rejects an employment relationship and defines the relationship between Plaintiffs and Defendants as lessor-lessee. In order to win her FLSA, AWA, or AMWA claims, Plaintiffs will have to show that portion of the Contractor Lease is false. Therefore, the arbitration clause covers the dispute at issue.

3.  The Individual (non-Company) Defendants

Plaintiffs contend that even if the Arbitration provision in the Contractor Lease is binding, it is not binding as to the individual defendants Martori, Owensori, Bertoncino, and Scott ("Individual Defendants") because the Individual Defendants did not sign and are not parties to the agreement. (Resp. at 13). Unlike the Entertainment Lease, the Contractor Lease does not contemplate whether agents, members, or officers of the

Defendant Company are covered by the arbitration clause. Defendants argue that the arbitration agreement is binding as to them under theories of estoppel and agency. (Reply at 4–6). Generally, a party is only bound to arbitrate disputes which it has contractually agreed to arbitrate. *Smith v. Pinnameni*, 254 P.3d 409, 415 (Ariz. Ct. App. 2011). There are some exceptions to this rule under theories of incorporation by reference, assumption, agency, veil-piercing or alter ego, equitable estoppel, and third-party beneficiary. *Duenas v. Life Care Centers of Am., Inc.*, 336 P.3d 763, 772 (Ariz. Ct. App. 2014) (citing *Bridas S.A.P.I.C. v. Gov't of Turkm.*, 345 F.3d 347, (5th Cir. 2003). The Court agrees with Defendants that this situation is one such exception and Plaintiffs must arbitrate against Individual Defendants.

The Arizona Court of Appeals considered a similar issue in *Sun Valley Ranch Properties, Inc. v. Robson*, 294 P.3d 125 (Ariz. Ct. App. 2012). There, former business partners were disputing whether nonsignatory defendants could compel plaintiffs to arbitrate using an arbitration clause in a partnership agreement. The court instructed that doubts about the arbitrability of disputes should be resolved in favor of arbitration, and held that nonsignatories could compel signatories to arbitrate "when the relationship between the signatory and nonsignatory defendants is sufficiently close that only by permitting the nonsignatory to invoke arbitration may evisceration of the underlying arbitration agreement between the signatories be avoided." *Id.* at 130, 134–35 (quoting *CD Partners, LLC v. Grizzle*, 424 F.3d 795, 798 (8th Cir. 2005)). This means of compelling arbitration is sometimes called an "alternative estoppel theory, which takes into consideration the relationships of persons, wrongs, and issues." *Id.* at 134 (quoting *Merrill Lynch Inv. Managers v. Optibase Ltd.*, 337 F.3d 125, 131 (2d Cir. 2003)); *accord Comer v. Micor, Inc.*, 436 F.3d 1098, 1104 n.10 (9th Cir. 2006) ("We thus join many of our sister circuits who . . . have recognized that contract and agency principles continue to bind nonsignatories to arbitration agreements."). When the relationship between the persons, wrongs, and issues is a close one, nonsignatories can "force a signatory into arbitration." *CD Partners*, 424 F.3d at 799.

Here, the relationship between the signatory and nonsignatory defendants is "sufficiently close" that not allowing Individual Defendants to compel Plaintiffs into arbitration would eviscerate the underlying agreement. Individual Defendants are owners of Defendant Company and the issues between them and Plaintiffs are the same as between Plaintiffs and Defendant Company. The people, alleged wrongs, and legal issues are deeply intertwined. Therefore, Individual Defendants can compel the Plaintiffs who signed the Contractor Lease to arbitrate.

4. <u>The Entertainment Lease</u>

Within the Entertainment Lease, the Plaintiffs who signed it are referred to as "Entertainers" and Defendant Company is referred to as "Club." A portion of the Entertainment Lease's arbitration clause:

> A. <u>Binding Arbitration.</u> Any and all controversies between the **Entertainer** and **Club** (and any other persons or entities associated with the **Club**, including but not limited to related corporations, subsidiaries, and affiliates, officers, directors, shareholders, members, employees, and/or agents), regardless of whether such claims sound in contract, tort, and/or are based upon a federal or state statute, shall be exclusively decided by binding arbitration held pursuant to and in accordance with the [FAA], . . . . **<u>All parties waive any right to litigate such controversies, disputes or claims in a court of law, and waive the right to trial by jury.</u>**

(Entertainment Lease ¶ 21) (emphasis in original). The agreement allows the parties to mutually agree on an arbitrator or apply to the American Arbitration Association. (*Id.* ¶ 21).

The Entertainment Lease's severability clause:

> 19. <u>Severability.</u> In the event that any term, paragraph, subparagraph, or portion for this **Lease** is declared to be illegal or unenforceable, this **Lease** shall, to the extent possible, be interpreted as if that provision was not a part of this **Lease**; it being the intent of the parties that any illegal or unenforceable portion of this **Lease**, to the extent possible, be severable from this **Lease** as a whole.

(*Id.* ¶ 19) (emphasis in originals). The Entertainment Lease states in paragraph 20 that it "shall be interpreted pursuant to the laws of the State of Arizona." Additionally, Plaintiffs

have described Cabiles's and Jeter's signed Entertainment Leases as "minorly altered" from the other agreements, but do not argue they are materially different.

The Entertainment Lease includes "<u>THE PARTIES SPECIFICALLY DISAVOW ANY EMPLOYMENT RELATIONSHIP BETWEEN THEM.</u>" (*Id.* ¶ 12) (underline and caps in original). Nevertheless, the Entertainment Lease includes a provision that says Defendant Company will pay all arbitration fees in an "Employment Related Claim" that Plaintiffs would not have had to pay had they brought the case in a court proceeding. (*Id.* ¶ 21). And, while it has a cost-shifting provision awarding fees to the prevailing party, that provision explicitly excludes "an Employment Related Claim prosecuted under a federal or state statute which provides for the award of fees and costs to a prevailing party. In such circumstances, the federal or state statute which provides for the award of fees and/or costs for the statutory claims and this provision shall only govern the award of fees and costs related to any non-statutory claims." (*Id.* ¶ 21). In other words, the agreement is consistent with cost-shifting provisions found in federal and state statute.

The Entertainment Lease also includes a provision that lays out the consequences of a court, tribunal, arbitrator, or governmental agency determines Entertainers are employees. (*Id.* ¶ 12). It says they will be paid minimum wage reduced by any "maximum 'tip credit' as may be allowed by law," and it requires Plaintiffs to return "entertainment fees" if they are ever classified as an employee. (*Id.*). If Plaintiffs do not return the fees, the contract calls for them to be considered wage credit. (*Id.*) An entertainment fee is what Plaintiffs charged for "certain performances" and are "neither tips nor gratuities." (*Id.* ¶ 11). The minimum price for these performances was fixed by the Defendant Company, though Plaintiffs could charge less if they notified Defendant Company in writing and could receive more than the fixed price in the form of tips or gratuities. (*Id.*). Plaintiff argues that these are unconscionable provisions.

Plaintiff argues the Entertainment Lease is void for similar reasons she believed the Contractor Lease was void. She particularly homes in on paragraph 12, which calls for Plaintiffs to return entertainment fees if they are ever re-classified as employees. Plaintiff

says these are functionally indemnity and waiver provisions—provisions that chill Plaintiffs from vindicating their statutory rights. (Resp. at 14–16). Plaintiffs argue that much less severe and much less punitive forms of indemnity have been held unconscionable. (Resp. at 15–16). Once again, Plaintiffs overstates their case.

These clauses in the Entertainment Lease are not indemnity or waiver provisions, but rather the consequences of a new economic relationship. As the Entertainment Lease is written, it establishes a relationship of "landlord and tenant" and "specifically disavow[s]" the existence of an employment relationship. Under the terms of the Lease, Entertainers keep the entertainment fees plus any money they receives in addition to the fees. If an Entertainer can show she was a bona fide employee, however, she would be entitled to wages and the entire business arrangement between the parties is transformed in accordance with the minimum wage "as may be allowed by law." It is unclear to the Court why this would create such a one-sided agreement that it unfairly oppresses Plaintiffs. Nor does the Court believe the provision "unfairly surprise[s]" Plaintiffs, as the provision was in the contract, often capitalized or underlined, and complete with information about minimum wage and what rate they would be paid if she were considered an employee. Plaintiffs provide no authority for the Court to hold such an arrangement is unconscionable, as every case she provides is easily distinguishable.

For example, Plaintiffs argue that an arbitration agreement is void where "unconscionable terms permeate the agreement." (Resp. at 10) (citing *Longnecker v. Am. Exp. Co.*, 23 F. Supp. 3d 1099, 1111 (D. Ariz. 2014)). But the only offending provision she points to is the above provision. Even assuming the provision is unconscionable, one provision surely does not "permeate" the entirety of an 8-page, 21-paragraph contract. *Andrio v. Kennedy Rig Services*, where the court held that a provision that required the plaintiff to indemnify the defendant was unconscionable, is also distinguishable because it was a literal indemnity agreement. Civil Action No. 4:17-CV-1194, 2017 WL 6034125 (S.D. Tex. Dec. 6, 2017). Additionally, the agreement at issue there was only two pages and six paragraphs long and did not contain a severance clause. *Id.*, at *1, *6. Plaintiff's

reliance on *Circuit City Stores, Inc. v. Adams*, 279 F.3d 889 (9th Cir. 2002), is also misplaced. That case was both based on California law and held to be one-sided because it required the employee to go to arbitration but allowed the employer to choose whether to bring its claims in court or arbitrate a dispute. *Id.* at 893. That is not the case here, as both parties are required to arbitrate disputes under the Entertainment Lease.

This case is also not like *Zaborowski v. MHN Government Services, Inc.*, 601 Fed. App'x 461 (9th Cir. 2014). The Ninth Circuit's memorandum decision in *Zaborowski* involved an FLSA claim against a former employer. There, the challenged arbitration provision that was ruled substantively unconscionable included clauses that gave the employer power to control arbitration candidates, shortened the statute of limitations period, required a $2600 filing fee, waived punitive damages, and shifted costs and fees "contrary to the applicable statutory cost-shifting regimes provided by California and federal law, which entitle only the prevailing plaintiff to an award of costs and fees." *Id.* at 463 (citing 29 U.S.C. § 216(b); Cal. Lab. Code § 1194(a)). None of these unconscionable clauses are present in the Entertainment Lease. It allows for a neutral arbitrator appointment, does not shorten the statute of limitations, and has cost-shifting provisions with requirements that they comply with relevant statutes. That is to say, it explicitly carves out exceptions to comply with state and federal employment statutes.

Because the Court finds the arbitration provision valid, the only remaining question is whether it covers the dispute at issue. Similar to the Contractor Lease, the Court finds that it does. The Entertainment Lease's arbitration provision applies to "Any and all controversies between the [plaintiff] and [Defendant Company] . . . , regardless of whether such claims sound in contract, tort, and/or are based upon a federal or state statute, shall be exclusively decided by binding arbitration." Plaintiff's claims are based on federal and state statute. Therefore, the arbitration clause covers the dispute at issue.

## IV. Conclusion

The arbitration provisions in the Entertainment Lease and the Contractor Lease are enforceable. Any unconscionable terms within the agreements are severable. Additionally,

the Individual Defendants are able to compel Plaintiffs to arbitrate.

Therefore, **IT IS ORDERED**:

1. Defendants' motion to dismiss for lack of jurisdiction (Doc. 23) is **DENIED**;

2. Defendants' alternative motion to compel arbitration and stay proceedings is **GRANTED** as to all Plaintiffs that signed either the Contractor Lease or the Entertainment Lease.

3. The case is stayed for a period of one year, until July 19, 2020. The matter will be dismissed on that date and without further notice unless the parties request an extension of the stay before July 19, 2020.

Dated this 19th day of July, 2019.

Honorable Susan M. Brnovich
United States District Judge